**KINGVISION PAY PER VIEW, LTD., Plaintiff,**

v.

**RICHARD BOWERS AND GEORGE BOWERS, INC., d/b/a Bryce's Again, Defendants.**

**No. 97–2603–JWL.**

United States District Court, D. Kansas.

Dec. 18, 1998.

---

**916**

Shirla R. McQueen, Kevin D. Weakley, Sharp, McQueen, McKinley, Dreiling, Morain & Tate, P.A., Liberal, KS, Michael L. Matula,

Husch & Eppenberger, Kansas City, MO, for plaintiff.

James C. Trickey, Overland Park, KS, Wayne L. Zeigler, Zeigler Legal Services, Chtd., Olathe, KS, for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This action arises from defendants' allegedly unauthorized interception and televising of the Tyson–Seldon boxing match which took place on September 7, 1996. The case is presently before the court on the summary judgment motions of plaintiff (doc. 26) and defendants (doc. 25). For the reasons set forth below, the court denies both motions.

### I. Facts

Plaintiff Kingvision Pay Per View, Ltd. ("Kingvision") is a Delaware corporation that licenses various boxing matches to its customers on a pay-per-view basis. Defendants are the owners and operators of a bar called Bryce's Again, located in Shawnee, Kansas.

The uncontroverted facts reveal that on September 7, 1996, defendants broadcast the Tyson–Seldon boxing prizefight to their patrons at Bryce's Again. The uncontroverted facts further reveal that defendants subsequently purchased the rights to show the Holyfield–Moorer boxing match on November 8, 1997.

On November 25, 1997, plaintiff filed this lawsuit, alleging that the interception and subsequent broadcast of the Tyson–Seldon event was unauthorized, and thus in violation of the Cable Communications Policy Act of 1984, §§ 633 and 705, as amended, 47 U.S.C. §§ 553 and 605. Defendants, on the other hand, admit that the Tyson–Seldon match was shown, but deny that its broadcast was unauthorized.

In December, 1997, while this action was pending, defendants began sending installment payments to plaintiff for the Holyfield–Moorer fight. As of February 16, 1998, the remaining balance on that account was $900.00. On March 16, 1998, plaintiff received from defendants a check drawn in the amount of $900.00. On the underside of the check, the following language appears:

For payment in full and release of all claims and services provided by payee, its assigns, and/or subsidiaries thru March 7, 1998.

## II.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548(quoting Fed.R.Civ.P. 1).

## III.  Analysis

### a.  Accord and Satisfaction

Defendants move for summary judgment on the ground that the remittance to plaintiff of the March 6, 1998 check constituted an accord and satisfaction barring plaintiff's claim with respect to the Tyson–Seldon match.

In *EF Hutton & Co. v. Heim*, 236 Kan. 603, 604, 694 P.2d 445 (1985), the Kansas Supreme Court defined the doctrine of accord and satisfaction as follows:

> To constitute an accord and satisfaction, there must be an offer in full satisfaction of an obligation, accompanied by such acts and declarations or made under such circumstances that the party to whom the offer is made is bound to understand that if he accepts the offer, it is in full satisfaction of and discharges the original obligation. An accord and satisfaction, as an adjustment of a disagreement as to what is due from one party to another through payment of an agreed amount, must be consummated by a meeting of the minds and accompanied by sufficient consideration.

*Id.* at 610–11, 694 P.2d 445 (citations omitted). It is thus imperative, under Kansas law, that "the creditor must, at the least, understand that the debtor's offer is intended by the debtor to fully satisfy the disputed obligation." *U.S. to Use and Benefit of Joseph Stowers Painting, Inc. v. Harmon Const. Co, Inc.*, 1989 WL 32195 at *3 (D.Kan. 1989). Indeed, "[i]f the plaintiff did not in-

tend or understand that the claimed consideration was to operate as a release or satisfaction, there could be no contract of release or accord and satisfaction." *Id.* (quoting *Flett Constr. Co. v. Williams,* 210 Kan. 28, 29, 500 P.2d 54 (1972)).

■ The court agrees that the restrictive language written on the back of the March 6, 1998 check could be reasonably construed as an offer to pay $900 for the release of *all* claims then pending against defendants. The court is persuaded, however, that it is just as likely that plaintiff's agent truly believed the check merely represented the final payment due from defendants for the broadcast of the Holyfield–Moorer fight. The record is, therefore, controverted as to whether the check submitted by defendants constitutes an accord and satisfaction of defendants' obligation with respect to the Tyson–Seldon fight. The uncontroverted facts fail to indicate that the plaintiff was "bound to understand" that the language on the back of the check dated March 6, 1998 was intended as payment for anything other than the remaining balance owed for the Holyfield–Moorer fight. The court concludes that a reasonable fact finder could determine that no "meeting of the minds" occurred, and thus that the check did not constitute accord and satisfaction of plaintiff's claim. Accordingly, defendants' motion for summary judgment is denied.

#### b. Statute of Limitations Defense

■ With respect to defendants' contention that plaintiff's claim is time-barred, the court disagrees. First, the court notes that defendants' attempt to raise this affirmative defense in their *response* to plaintiff's motion for summary judgment is procedurally improper. Moreover, because defendants failed to preserve this issue in the pretrial order, the court need not consider it. *See* D. Kan. Rule 16.2. Even so, because the plaintiff has not objected to defendants raising the issue, the court has considered defendants' statute of limitations argument, and rejects it on the merits.

Defendants cite *Joe Hand Promotions, Inc. v. Lott,* 971 F.Supp. 1058 (E.D.La.1997) to support their contention that the statute of limitations has run with respect to plaintiff's 47 U.S.C. § 605 claim. Finding that no express statute of limitations provision governs actions filed pursuant to 47 U.S.C. § 605, the *Lott* court compared plaintiff's 47 U.S.C. § 605 claim to a state law conversion claim, and applied the state statute of limitations governing conversion actions. *Id.* at 1061–64. Because the relevant statute of limitations limited conversion actions to one year, the court held that plaintiff's 47 U.S.C. § 605 claim was time-barred. *Id.* at 1064.

While relying on the *Lott* decision to support their contention that a state law limitations period should apply in this case, defendant urges this court to depart from *Lott's* analogy of 47 U.S.C. § 605 actions to state law conversion claims, and to instead adopt K.S.A. § 60–514(c)'s one-year limitations period governing actions "upon statutory penalty or forfeiture." K.S.A. § 60–514(c).[1] Defendants thus argue that because the alleged claim arose on September 7, 1996, and plaintiff's complaint was not filed until November 25, 1997, plaintiff's action is barred by § 60–514(c).

The court finds defendants' analogy of plaintiff's 47 U.S.C. § 605 claim to an "action upon statutory penalty" misguided. The court presumes defendants so contend because the statute of limitations period governing conversion actions in Kansas is two years, and plaintiff's claim was filed within that limitations period. K.S.A. § 60–513(2). The court holds that if squarely faced with the issue, Kansas courts would follow the *Lott* court's rationale and hold that the statute of limitations governing conversion actions, rather than actions upon statutory penalties, would apply to plaintiff's 47 U.S.C. § 605 claim. Under the *Lott* rationale, then, plaintiff's claim is not time-barred.

#### c. Unauthorized Showing

The plaintiff moves for summary judgment on the ground that the defendants intercept-

---

1. Because K.S.A. § 60–518 does not pertain to actions for statutory penalties, the court assumes that defendants' reference to K.S.A. § 60–518 is

in error, and that defendants instead intended to refer the court to the statute of limitations found at K.S.A. § 60–514(c).

ed and broadcast the Tyson–Seldon pay-per-view fight without plaintiff's authorization in violation of 47 U.S.C. §§ 553 and 605. In response, defendants contend that the reception and broadcast of the pay-per-view event was in fact authorized, claiming that the event could never have been received nor broadcast without plaintiff's permission.

Section 633 of the Cable Communications Policy Act of 1984, 47 U.S.C. § 553, proscribes the unauthorized reception of cable services, whereas section 705 of the same Act, 47 U.S.C. § 605, prohibits the unauthorized publication or use of intercepted communications. Thus, both section 553 and 605 serve to impose civil liability upon those who receive and broadcast communications without specific authorization from the sender thereof. Accordingly, to the extent that the parties dispute whether defendants were authorized by plaintiff to intercept and show the Tyson–Seldon fight, a material fact issue remains for trial. Accordingly, plaintiff's motion for summary judgment is denied.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for summary judgment (doc. 26) is denied.

IT IS FURTHER ORDERED THAT defendants' motion for summary judgment (doc. 25) is denied.